IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MORRIS, | : | CIVIL ACTION |
| | : | NO. 08-3398 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STEEL WORKERS OF | : | |
| AMERICA LOCAL 4889, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M


EDUARDO C. ROBRENO, J.                                    MARCH 16, 2010

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . -2-
II.  BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . -2-
     A.   Plaintiff's Employment. . . . . . . . . . . . . . . -2-
     B.   Incident Leading to Morris' Termination . . . . . . -4-
     C.   Plaintiff's Termination and Appeal . . . . . . . . . -6-
III. LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . -8-
IV.  ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . -9-
     A. Counts I & II - LMRA Claims Against Both USS and the
     Union. . . . . . . . . . . . . . . . . . . . . . . . . . -9-
          1. Claim Against the Union - breach of duty of fair
             representation . . . . . . . . . . . . . . . . . -10-
          2. Claim Against USS - Breach of the BLA. . . . . . -18-
     B. Count III - Claims of Racial Discrimination & Retaliation
     Under § 1981 . . . . . . . . . . . . . . . . . . . . . . -19-
          1. Legal Standard. . . . . . . . . . . . . . . . . . -19-
          2. Claims of Discrimination against USS. . . . . . . -20-
               a. Plaintiff's Termination. . . . . . . . . . . -20-
               b. Plaintiff's Discipline in 2006. . . . . . . .-25-
               c. Plaintiff's Overtime Assignment. . . . . . . -27-
          3. Claim of Retaliation against USS. . . . . . . . . -31-
          4. Claim of Discrimination against the Union. . . . .-34-
V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . -39-

## I.   INTRODUCTION

Plaintiff James Morris ("Plaintiff") initiated this action against Defendants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 4889[1] ("Union") and U.S. Steel Corp. ("USS"), (collectively "Defendants"), pursuant to 42 U.S.C. § 1981 ("Section 1981" or "§ 1981") and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Specifically, Plaintiff alleges that his former employer, USS, violated a collective bargaining agreement by forcing Plaintiff to work overtime and by treating similarly situated black employees more favorably than Plaintiff (Count I). Plaintiff also alleges that the Union breached its duty of fair representation by refusing to file a grievance on his behalf, among other claims (Count II).  Finally, Plaintiff brings a § 1981 claim against both Defendants, alleging that their breaches of duty were racially motivated (Count III).

Both Defendants have moved for summary judgment.  For the reasons that follow, Defendants' motions for summary judgment will be granted.

## II. BACKGROUND

### A. Plaintiff Employment

---

[1]     Defendant Union is incorrectly identified as United Steelworkers of American, Local 4889 in the Complaint.

Plaintiff is a white male and was an employee of USS in the Fairless Hills, Pennsylvania facility prior to his termination on January 25, 2008. (USS Statement of Facts ("SOF") at ¶ 1.) Morris was a member of a collective bargaining unit, the Union, and his employment terms were covered by the Basic Labor Agreement ("BLA") between USS and the Union. (Complaint at ¶ 30.) Plaintiff was hired in 1998 to perform general labor and maintenance work. By 2006, Plaintiff held the position of Operating Technician and worked as an Assistant Operator on the Galvanizing Line. (Plaintiff Dep. at 26-27.) The Galvanizing Line is part of the flat rolled steel finishing process, which primarily involves coating steel strips with zinc according to customer specifications. (USS SOF at ¶ 6.)

Plaintiff worked as an "Op Tech," who performed both operations and maintenance work. Op Techs received a higher pay under the BLA and also perform maintenance work during downturns. Maintenance downturns occur for eight to sixteen hours every other week, during which operations on the Galvanizing Line would stop for machinery to be repaired on the Line.[2] However,

---

[2] The parties disagree about whether operations employees were required to stay at work during their regularly scheduled shift, regardless of whether they were scheduled to work during an operating turn or maintenance downturn. USS avers that operations employees were required to stay during their regularly scheduled shift, while Plaintiff avers that this overtime was option. (USS SOF at ¶ 10; Doc. no. 29, Pl.'s Opp'n SOF at ¶ 10.)

employees who were not scheduled to work during a downturn could volunteer to work overtime and perform maintenance by signing a sheet posted in the department.

**B. Incident leading to Plaintiff's termination**

During the week of February 25, 2007, Plaintiff was scheduled to work as an Assistant Operator on the "C" Crew. Defendants claim that the posted schedule indicated that the Assistant Operators on the crews assigned to the shift before and after the "D" Crew were to cover an Assistant Operator vacancy on the "D" Crew by each working four hours of overtime. (USS SOF at ¶ 13; USS Ex. 5, 2/25/07 Work Schedule.)  On March 1, 2007, Plaintiff' "C" Crew was assigned to the first turn (12:00 a.m. - 8:00 a.m.), and the "D' Crew was assigned the second turn (8:00 a.m. - 4:00 p.m.).  Defendant USS contends that, on this day, Plaintiff was scheduled to work from 12:00 a.m. to 12:00 p.m to cover for the Assistant Operator vacancy on the second turn. (USS Exhibit 5, 2/25/07 Work Schedule.)  However, Plaintiff argues that he was only scheduled to work his regular production shift and that the maintenance time was voluntary. (Pl.'s SOF at ¶ 15.) Plaintiff also testified that employees were scheduled to perform operations work during maintenance downturns were required to work their scheduled shift. (Plaintiff Dep. at 242:18-24-243:1-11.)

At approximately 8:30 a.m. on March 1, 2007,

-4-

Maintenance Manager Paul Denis approached Plaintiff with an assignment sheet directing Plaintiff to work on refurbishing lox valves for the remaining four hours, until 12:00 p.m. (USS SOF at ¶ 18.)  Plaintiff told Mr. Denis that he did not sign the sheet volunteering to work maintenance overtime that day. (Id. at ¶ 20.)  At this point, Defendant USS claims that Mr. Denis told Plaintiff he was scheduled to work for the first half of the second term and Plaintiff folded up the assignment sheet and put it in Mr. Denis' pocket.  Mr. Denis claims to have warned Plaintiff not to be insubordinate. (Id. at ¶ 22.)  USS claims that Mr. Denis later recognized Plaintiff was not working on the repair work and found him in the locker room where Mr. Denis instructed Plaintiff to return to his job.  Mr. Denis claims to have informed Plaintiff that he intended to cite Plaintiff for insubordination if he did not return to work.  Plaintiff then left the plant without permission and did not perform the repair work. (Id. at ¶ 26.)

Plaintiff contends he told Mr. Denis that the assignment could "easily take days" and he wanted "the same privileges as everybody else[.]" (Pl.'s SOF at ¶ 21.)  Plaintiff claims that no testimony exists stating he was warned not be insubordinate and he questioned "why he was being singled out for this discipline when it was in direct violation of the company's policies[.]" (Id. at ¶ 26.)

## C. Plaintiff's Termination and Appeal

Mr. Denis later sent an email to the Plant Manager, the Process Coordinator and the Employee Services Staff Supervisor detailing the events that transpired with Plaintiff on March 1, 2007. On March 2, 2007, Facility Manager, John Jaloski, issued two five-day suspensions to Plaintiff for insubordination and leaving the plant without permission from the previous day. The Plant's Process Coordinator, Mark Cebrick, approved the discipline and provided the notices to the USWA Grievance Committee Chairperson, Kathy Bara, on March 2, 2007. (USS SOF at ¶ 28.) Plaintiff waived his rights to a preliminary hearing as provided under the BLA § 9b(3). (Pl.'s SOF at ¶ 30.) On March 7, 2007, the Employee Staff Supervisor sent Plaintiff a letter stating that the suspensions had been converted to discharge. The Union subsequently filed timely grievances on Plaintiff's behalf challenging the suspensions and discharges as violating the BLA's Article Five Sections I and J (USS SOF at ¶¶ 32, 33, 35) and pursued the grievances through the three steps of the grievance procedure. (Union's SOF at ¶ 29.) Plaintiff's grievances were denied by USS at Steps 2 and 3 of the grievance procedure. (Id. at ¶¶ 33, 35.) The Union advised USS of its disagreement with the Company's denial of the grievances.

The Union appealed Plaintiff' case to binding arbitration under the BLA. After a November 8, 2007 hearing, the

arbitrator decided in favor of USS and denied Plaintiff's grievances. (Union Ex. Q, Arb. Award, dated 1/24/08.) During the period between USS's initial decision to discipline Plaintiff and the binding arbitration decision upholding the discharge, Plaintiff was permitted to continue working under the BLA. After the arbitration award was announced, Plaintiff' termination became final. Plaintiff contends that he lost the arbitration as a result of the Union's unsatisfactory representation. (Pl.'s SOF at ¶ 38.)

USS alleges that Plaintiff had a history of insubordinate behavior while employed at USS. USS claims that, in September 3, 2006, Plaintiff was scheduled to work on the first and second turns at the plant. However, Plaintiff told his manager that he could not cover the vacancy on the second turn and, without permission, left the plant. Later, Mr. Cebrick issued Plaintiff two five-day suspensions for insubordination and for leaving the plant without permission. The Union filed grievances challenging the discipline. Following negotiations between USS and the Union, the discipline was subsequently rescinded and Plaintiff lost no pay or work time. (Union Ex. G, Letter to Plaintiff, dated 9/25/06.)

Plaintiff also filed a grievance on February 22, 2007, complaining of excessive overtime and protesting the scheduling of mandatory overtime. (Union Ex. I, 2/22/07 Grievance.)

Plaintiff also alleges he made other race-based complaints about overtime scheduling at the plant. Plaintiff felt that black employees where not disciplined for calling off work or failing to work voluntary overtime. Plaintiff admits that Mr. Cebrick received the February 22 grievances on March 6, 2007, or four days after the discipline for the March 1, 2007, incident had already been issued. (Pl.'s SOF, doc. no. 30, at ¶ 19.) The grievance regarding overtime was presented to the Company on March 6, 2007, and was immediately denied by the company. (Union SOF at ¶ 19.)

## III. LEGAL STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 140 (quoting <u>Singletary v. Pa. Dept. of Corrections</u>, 266 F.3d 186, 192 n.2 (3d Cir. 2001)).  Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

**IV. ANALYSIS**

**A. Counts I & II - LMRA Claims against both USS and the Union**

Claims under Section 301 of the LMRA fall into two general categories: pure claims and hybrid claims. Pure claims are cases brought by a union against an employer. <u>Serv. Employee Int'l Union Local 36 v. City Cleaning Co.</u>, 982 F.2d 89, 94, n.2 (3d Cir. 1992).  Hybrid claims are brought by an employee alleging that the employer breached the CBA and that the employee's union violated its duty to fairly represent the employee. <u>Id.</u> (emphasis in original); <u>see also Felice v. Sever</u>,

985 F.2d 1221, 1226 (3d Cir. 1993) (in a § 301 hybrid action,
"the plaintiff will have to prove that the employer breached the
collective bargaining agreement in order to prevail on the breach
of duty of fair representation claim against the union, and vice
versa").  The Court will analyze the claims against USS and the
Union separately.

### 1. Claim against the Union - Breach of duty of fair representation as to the termination claim

#### a. Plaintiff's allegations

    Plaintiff claims that the Union breached its duty of
fair representation under § 301 for its "[r]epeated [f]ailure . .
. to [t]ake [r]ace-based [g]rievances." (Pl.'s Br. at 9.)  In
support of his argument, Plaintiff claims that Ms. Bara
repeatedly failed to take his race-based grievances from the time
he was hired until his termination.  Plaintiff claims that Ms.
Bara told him, "[the BLA] protections don't apply to you[.]" (Id.
at 11.)  Plaintiff complains that the Union did not file a
grievance for excessive overtime until February 2007, despite the
excessive overtime scheduling that began around September 2006.
Plaintiff points to Mr. Cebrick's testimony that, in Cebrick's
opinion, he felt the Union should have brought the grievance
about excessive overtime to management earlier, and there was
excessive overtime scheduling at the plant. (Cebrick Dep. at
84:3-24.)  Plaintiff also claims that the Union "put a hold" on
the February 22, 2007, grievance and Ms. Bara could not recall

-10-

why the Union put a hold on it at the second step of the grievance process. (Bara Dep. at 48:20-22.) Plaintiff also notes that months after the February 2007 grievance, in June 2007, excessive overtime still existed at the plant. (Pl.'s Ex. 21, dated 6/3/07).

Furthermore, Plaintiff claims that, at arbitration for his termination grievances, the Union failed to present Union witnesses on behalf of Plaintiff. He claims that the Union "did not get any witnesses for Plaintiff" including Mr. Younger, the other assistant operator scheduled to work on March 1, 2007, who was allegedly sick on the day of the incident from excessive overtime work.

Plaintiff argues that, under the BLA, an employee has a right to refuse dangerous work and the excessive overtime scheduling at the plant created a dangerous working condition.[3]

---

[3] Defendant Union correctly notes that Plaintiff raises, for the first time in his response to the instant motion, the argument that his refusal to perform assigned work on March 1, 2007, was justified under the BLA because the work was unreasonably dangerous. In making this case, Plaintiff misstates the relevant contractual provision and its applicability to this case.

Under the "Right to Refuse Unsafe Work" provision of the BLA, an employee may object to an assignment without fear of discipline where the employee has a good faith belief that the assignment is unreasonably dangerous. (BLA, Article Three, Section B at 45-46.) This contractual provision must be invoked at the time the assignment is refused and is triggered by the employee notifying his immediate supervisor of the employee's belief that there exists "an unsafe or unhealthful condition beyond the normal hazards inherent in the operation." (Id.)

(BLA, Article Three, Section A at 43.)

## b. Statute of limitations

Claims under Section 301 are subject to a six-month statute of limitations period. <u>Podobnik v. United States Postal Serv.</u>, 409 F.3d 584, 593 (3d Cir. 2005) (citing <u>Costello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 172 (1983)).  Thus, any actions or omissions by the Union that may have given rise to a claim under § 301, prior to January 21, 2008 (six months before the instant matter was filed), are time barred.  Accordingly, Plaintiff's allegations about: (1) excessive overtime and discipline issues in 2006, (2) discriminatory overtime assignments since 1998 and (3) the Union refusing to accept his race-based grievances are all time barred.

However, as the Union concedes, Plaintiff's claim for breach of duty of fair representation for the termination grievances is not time barred. (Union Br. at 17.)  Specifically,

---

Nothing in the record indicates that Plaintiff ever invoked this provision on March 1, 2007, when he refused his supervisor's orders and left the plant.  In fact, during his deposition, Plaintiff never cited the Right to Refuse Work provision when stating his reasons for leaving the plant on the day in question. (Plaintiff Dep. at 119-121, 129-130.) Plaintiff's complaint also contains no reference to the Right to Refuse Work provision or his safety concerns. (<u>See</u> Complaint.) Finally, even if Plaintiff had invoked this provision because of his safety concerns regarding excessive overtime, he had no right under the BLA to simply leave the plant. (BLA, Article Three, Section B at 45.)  Plaintiff does not contest that he was being insubordinate for leaving the plant against his supervisor's orders.

Plaintiff's claim regarding the Union's representation of his termination begins to accrue when the adverse arbitration decision was reached. See <u>Childs v. Pa. Fed'n Bhd. of Maintenance of Way Employees</u>, 831 F.2d 429, 436 (3d Cir. 1987). Accordingly, the Court will only consider Plaintiff's allegations relating to the Union's representation of his termination grievances.

### c. **Breach of duty of fair representation standard**

Under § 301, a union may be held liable for a breach of its duty of fair representation. See <u>Costello</u>, 462 U.S. at 164. The duty of fair representation imposed upon a union stems from its role as the exclusive bargaining representative of the employees. <u>Vaca v. Sipes</u>, 386 U.S. 171, 177 (1967). Consequently, courts must extend great deference to the union so as to support the "effective performance of their bargaining responsibilities." <u>Air Line Pilots Ass'n. Int'l. v. O'Neill</u>, 499 U.S. 65, 78 (1991). In granting such deference, courts require a plaintiff to prove that the union's conduct toward a member of the collective bargaining agreement had been "arbitrary, discriminatory or in bad faith." <u>Vaca</u>, 386 U.S. at 190. Mere negligence on the part of the union is insufficient to satisfy this demand. <u>United Steelworkers of America v. Rawson</u>, 495 U.S. 362, 376 (1990); <u>Bazarte v. United Transp. Union</u>, 429 F.2d 868, 872 (3d Cir. 1970).

In cases where an alleged breach is predicated on a

union's failure to file a grievance, the Supreme Court has allowed unions broad discretion in determining whether or not a termination warrants a grievance. <u>Chauffeurs, Teamsters & Helpers v. Terry</u>, 494 U.S. 558, 567-568 (1990) (citing <u>Vaca</u>, 386 U.S. at 185). This broad discretion allows a union to determine whether a grievance has merit, but with the caveat that "[an] individual employee has no absolute right to have his grievance arbitrated." <u>Vaca</u>, 386 U.S. at 195.

Additionally, the Third Circuit has established that "[a]n employee . . . is subject to the union's discretionary power to settle or even to abandon a grievance, so long as it does not act arbitrarily." <u>Bazarte</u>, 429 F.2d at 872. The Third Circuit has further held that a union's complete failure to file a grievance does not necessarily breach the duty of fair representation. <u>See</u> <u>Raczkowski v. Empire Kosher Poultry</u>, 185 Fed. App'x 117, 118-19 (3d Cir. 2006) (non-precedential).

Courts have established high thresholds for arbitrary conduct, holding that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." <u>Air Line Pilots</u>, 499 U.S. at 67 (citing <u>Ford Motor Co. v. Huffman</u>, 345 U.S. 330, 338, (1953)). Arbitrariness has been further characterized as being so unreasonable as to be "without rational basis or

explanation." See Raczkowski, 185 Fed. App'x at 118 (citations omitted).

The same high threshold applies for bad faith, in which a plaintiff must prove fraud, deceit or dishonesty on the part of the union. Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge, 403 U.S. 274, 299 (1971). Finally, a union acts in a discriminatory manner by treating an employee differently "because of an 'irrelevant and invidious' distinction." Pererson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners, 676 F.2d 81, 87 (3d Cir. 1982) (citing Steele v. Louisville & Nashville R.R., 323 U.S. 192, 203 (1944)). Thus, the law is clear that in order for Plaintiff to prove that the Union breached the duty of fair representation, he must provide evidence of the Union's arbitrary, discriminatory, or bad faith handling of his claim.

### d. Analysis of Plaintiff's claims

Plaintiff fails to establish the fundamental elements of a breach of duty of fair representation under § 301 claim. Plaintiff fails to address several significant factors from his argument, which illustrates the absence of evidence in support of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Additionally, he fails to direct the Court to any alternative controlling case law that dictates the standard by which the

Union should have abided.[4]

Plaintiff does not allege, or present any evidence, that the Union's action during the grievance process or at the arbitration was arbitrary or irrational. In this case, the Union grieved Plaintiff' discharge through each step of the grievance procedure and ultimately appealed Plaintiff' discharge grievance to final and binding arbitration. Plaintiff was represented by the Union staff representation, Lew Dopson, at the arbitration and Plaintiff was allowed to testify without restriction. (Union Br. at 21; Union Ex. Q, Arb. Award.)

Furthermore, to the extent that Plaintiff alleges his co-worker, Bob Younger, could have offered testimony relating to excessive overtime or his own physical condition, this hypothetical testimony has no relevance to Plaintiff' refusal to work or his insubordination. See, e.g., Rosado v. Potter, No. 04-758, 2007 WL 30864, at *10 (D. Conn. Jan. 4, 2007), aff'd, 295 Fed. App'x 423 (2d Cir. 2008) ("[W]ith regards to the other suggested witnesses, Plaintiff offers nothing other than his conclusory allegations into the record to substantiate what testimony [a potential witness] might have offered at the

---

[4]    At oral argument, Plaintiff's counsel asked that the Court consider the "totality of the circumstances" of the Union's actions in allegedly refusing Plaintiff's grievances and poorly representing his termination grievances. There is no case law supporting a "totality of the circumstances" analysis of the Union's actions.

arbitration hearing.").

Bearing in mind the deference given to the Union's discretionary power in handling a grievance, Plaintiff cannot prove that the Union's representation was "arbitrary" under § 301. <u>Vaca</u>, 386 U.S. at 190. The undisputed facts dictate that no reasonable jury could find that the Union's decision not call additional witnesses at the arbitration was arbitrary or irrational. <u>See</u> <u>Air Line Pilots</u>, 499 U.S. at 67.

Moreover, the Court notes that the Union's consistent challenge of the grievance through binding arbitration not only shows a good faith effort to help Plaintiff, but patently contradicts the conclusory allegation made by Plaintiff that the Union discriminated against him. Additionally, despite the fact that many of Plaintiff' claims are time-barred, he has presented absolutely no evidence to indicate that he was treated in a discriminatory manner or that the Union engaged in fraud or deceit, as is required to show bad faith. Indeed, the Union's representation of Plaintiff in his previous grievances, including his 2006 grievance in which the Union was successful in reducing Plaintiff' discharge to a suspension with no work time or pay lost, undermines any claim that the Union harbored animus against him. Accordingly, Plaintiff has failed to establish the elements of a breach of duty of fair representation claim. Given the absence of proof offered by Plaintiff, summary judgment in favor

of the Union on Plaintiff's § 301 claim is warranted. <u>See</u>
<u>Celotex</u>, 477 U.S. at 325; <u>Matsushita Elec. Indus. Co.</u>, 475 U.S.
at 586.

All the Plaintiff has shown is that he disagreed with
the manner and method by which the Union representative presented
his grievances.  This disagreement does not show that the Union
acted arbitrarily, in bad faith or in a discriminatory manner.

### 2. Claim against USS - Breach of the BLA

#### a. Plaintiff's allegations

Plaintiff claims that USS violated Article Four and
Article Five of the BLA by assigning excessive overtime. (Pl.'s
Br. at 8-9.)  In support of his argument, Plaintiff points to the
February 22, 2007 grievance that he filed, as well as his own
testimony that Mr. Denis told him "if you fall asleep driving
home from work, once you leave the plant, I [Denis] will not be
accountable." (Plaintiff Dep. at 234:6-11.)  Plaintiff also
references Mr. Cebrick's testimony, who testified that he
believed there was excessively scheduled overtime. (Cebrick Dep.
at 85:1-3.)

#### b. Analysis

As the Court has already found that Plaintiff failed to
establish the elements of a breach of duty of fair representation
claim against the Union, Plaintiff's claim against USS must also
fail.  <u>See</u> <u>Felice</u>, 985 F.2d at 1226 (in a § 301 hybrid action,

"the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa"). Thus, summary judgment will be granted in favor of Defendants on Counts I and II.

**B. Count III - Claims of Racial Discrimination & Retaliation under § 1981, against both USS and the Union**

Plaintiff claims that both Defendants intentionally discriminated against him under Section 1981 on the basis of race.

### 1. Legal Standard

The elements of a §1981 claim are generally identical to the elements of an employment discrimination case under Title VII. Brown v. J. Kaz, Inc., 581 F.3d 175, 182 (3d Cir. 2009). The McDonnell-Douglas Corporation v. Green, 411 U.S. 792 (1973,) burden-shifting framework is applicable to racial discrimination claims under section 1981. Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997).

In order to establish a prima facie case, Plaintiff must show that (1) he was a member of a protected class; (2) he satisfactorily performed the duties of his position in conformity with the employer's expectations; (3) he suffered an adverse employment action (i.e. termination, discipline or overtime assignment); and, (4) the circumstances surrounding the adverse employment action infer discriminatory activity, either by

showing more favorable treatment to someone outside the protected class or otherwise. <u>Waldron v. SL Indus., Inc.</u>, 56 F.3d 491, 494 (3d Cir. 2005).

If Plaintiff satisfies his burden, the burden of production shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer satisfies its burden, then Plaintiff must demonstrate that USS's proffered reason for the employment decision is pretextual. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). Plaintiff makes several § 1981 claims for a variety of adverse employment actions. The Court will analyze each incident separately.

### 2. Claim of Discrimination against USS - Plaintiff' Termination

With respect to Plaintiff' termination claim, the parties dispute the second and fourth prongs of the discrimination standard.

#### a. Second Prong - Plaintiff did not satisfactorily performed the duties of his position in conformity with USS' expectations

USS argues that Plaintiff refused to perform maintenance work during his scheduled shift and, therefore, cannot show that he met USS's legitimate expectations for Op Techs, Plaintiff' position. USS reiterates that performing maintenance was an essential requirement for Op Techs scheduled to work during maintenance downturns. On the day of the incident

leading to Plaintiff' termination, USS argues that he was scheduled to work from 12:00 a.m. to 12:00 p.m. and that Plaintiff refused to complete his shift assignment.

Although Plaintiff argues he was only scheduled to work his regular production shift and that the maintenance time was voluntary overtime, it is clear to the Court that performing maintenance was an essential requirement for Op Techs scheduled to work during maintenance downturns and Plaintiff was scheduled to work until 12:00 p.m. on March 1, 2007. Ms. Susanna Show, Staff Supervisor for Employee Relations with the USS Employee Relations Department, testified that the Plaintiff was expected to stay at work to cover half of the next turn because of the vacancy on the "D" crew. (Show Dep. at 55:17-24-56:1-5.; 55:1-7.) Mr. Denis also testified that Plaintiff was expected to stay and work on maintenance during the downturn activity from 7:00 to 11:00 and he was not excused from work. (Denis Dep. at 43:13-24-44:1-18.) Ms. Bara testified that Plaintiff "is an operating technician. He is a maintenance employee even though he's scheduled to operating. So his job assignment is with maintenance whenever maintenance is required." (Bara Dep. at 121:17-22.) Moreover, Ms. Bara emphasized that "no matter what he's scheduled where he is scheduled he is a production employee and performs maintenance. I don't know how clear I can put that." (Id. at 125:2-6.)

Plaintiff himself testified that employees were scheduled to perform operations work during maintenance downturns were required to work their scheduled shift. (Plaintiff Dep. at 242:18-24-243:1-11.) Accordingly, it is clear to the Court that Plaintiff, as an Op Tech, was scheduled to work during maintenance downturns and was scheduled to work until 12:00 p.m. on March 1, 2007.

Regardless of Plaintiff's work schedule and his beliefs about voluntary overtime, it is undisputed that Plaintiff committed an infraction by leaving the plant against the orders of his supervisor. Plaintiff refused to complete his shift assignment, contrary to his supervisor's orders, and left USS without permission. It is this insubordination for which he was disciplined and terminated. Therefore, he cannot show that he met USS's legitimate expectations for Op Techs.

### b. Fourth Prong - Plaintiff cannot show the circumstances surrounding his termination infer discriminatory activity

Plaintiff cannot establish the fourth prong of his prima facie case, evidencing discrimination by showing more favorable treatment to someone outside the protected class. Plaintiff claims Sandy Metelus, a black female employee of USS, had not been disciplined for her excessive absenteeism. Plaintiff relies on his own deposition testimony, as well the Harkins and Swain affidavits. (See Harkins Aff., Pl.'s Ex. 8;

Swain Aff., Pl.'s Ex. 24.)  Mr. Harkins avers that he has

"observed on many occasions that blacks were being treated more

favorably than white males in terms of absenteeism and no

discipline." (Id. at ¶ 4.)  Harkins also avers that Sandy Metelus

had only recently been disciplined for her excessive absenteeism

and he claims she told him she would not submit a grievance for

this notice because she "'had gotten away with it for years[.]'"

(Id. at ¶ 7.)

USS responds that there is no concrete evidence that

similarly situated employees were treated more favorably than

Plaintiff.  USS claims there is nothing in the record showing

that black employees left their shift without permission and

evaded discipline.  Though Plaintiff generally testified, and Mr.

Harkins and Mr. Swain generally averred, that black employees

regularly reported off without being disciplined, there is no

substantiation to these self-serving testimonial statements.[5]

---

[5]      USS also notes that Mike Green, a black USS employee
Plaintiff claimed was excessively absent, was not designated by
management as a chronic abuser of sick time and was never on the
chronic absenteeism list. (Show Dep. at 59:4-9.)  Moreover, USS
notes that Metelus was known to management to have a medical
condition that caused her to have frequent absences, which were
always documented and approved by management and the plant's
medical department. (USS Br., doc. no. 27 at 19.)  USS notes that
Plaintiff himself was allowed to call out sick on several
occasions without receiving discipline. (Plaintiff Dep. at 62:9-
24-63:1-8.)  Finally, USS notes that both Green and Metelus were
not employees in similar positions to Plaintiff.  Green is an
operating technician who worked in the tester function capacity
in the quality assurance laboratory.  Metelus was a utility
technician assigned to the material handler function on the

Moreover, Plaintiff could point to no specific instances when black USS workers reported off or left their shift without permission.[6] (Plaintiff Dep. at 60:20-24-61:1-24, 148:12-20-154:10.) USS correctly notes that Plaintiff, who bears the ultimate burden of demonstrating that his discharge was the result of racial discrimination, cannot rely on his own deposition testimony to establish that he was treated unfavorably as compared to similarly situated black employees. See, e.g., Watson v. Eastman Kodak Co., 235 F.3d 851, 857 (3d Cir. 2000) (plaintiff failed to identify through extrinsic evidence his pay rate, or those of comparable employees, and he provided no evidence of the last date he received a paycheck; thus he failed to make the required evidentiary showing to sustain his unlawful compensation claim).

As this Court has previously held, at the summary judgment stage, generalized allegations are deficient as a matter of law. See Clair v. August Aeropace Corp., 592 F. Supp. 2d 812, 823 n.19 (E.D. Pa. 2009) (Robreno, J.) ("At the summary judgment

_____

Galvanizing Line. USS claims overtime for these individuals is entirely different than overtime required Plaintiff' position. (USS Br., doc. no. 27 at 19-20.)  Plaintiff has not disputed any of USS' arguments related to Green or Metelus.

[6]  Plaintiff provides a list of employee absences. (Pl.'s Sur-Reply, Ex. 29.) However, he provides no racial description for the listed employees, what prompted these absences or if the absences were approved or disapproved by USS.  Thus, this Exhibit does not provide any clarity or substantiation for the Plaintiff's § 1981 claim.

stage, such generalized allegations are deficient as a matter of law . . . .  This is so because in their absence, Clair fails to meet her burden of pointing to the existence of a genuine issue of material fact in the record. See Fed. R. Civ. P. 56(c).") (citing Robinson v. Natl. Med. Care, Inc., 897 F.Supp. 184, 187 (E.D. Pa. 1995) (noting that where plaintiff could not recall specific instances of disparate treatment, his subjective beliefs were insufficient to withstand a motion for summary judgment)).

Plaintiff cannot show that his termination occurred under circumstances giving rise to an inference of discrimination. Plaintiff cannot identify anyone outside of his protected class who was treated more favorably in a similar situation or any circumstances surrounding his termination to infer discriminatory activity.  As a result, Plaintiff is unable to establish a prima facie case of discrimination.

Even assuming arguendo he could establish a prima facie case, Plaintiff has not demonstrated that USS's proffered reason for terminating him is pretextual.  USS has presented evidence that he was terminated for refusing to work his overtime shift, to which he was assigned.  USS has repeatedly stated its legitimate, non-discriminatory reasons for terminating Plaintiff and he has presented no refuting evidence.

### 3. Claim of Discrimination against USS  -  Plaintiff' discipline in 2006

Plaintiff cannot establish a prima facie case of

discrimination with respect to the discipline issued in 2006.  On September 3, 2006, Plaintiff was scheduled to work and cover a vacancy on the following shift.  Plaintiff told his manager that he could not cover the vacancy.  Plaintiff, without permission, left the plant.  Later, Cebrick issued Plaintiff two five-day suspensions for insubordination and for leaving the plant without permission.

Plaintiff cannot show that he met USS's legitimate expectations for employees when he left work during his scheduled shift, in direct contravention of his manager's directions.  Therefore he cannot establish the second prong of his prima facie case.  Moreover, following this incident, Plaintiff's discipline was rescinded and he did not lose any time or pay from this incident. (Plaintiff Dep. at 140:2-5.)  Therefore, there was no adverse employment action. <u>See</u> <u>Lewis v. Bell Atlantic/Verizon</u>, No. 02-1016, 2008 WL 4115544, *5 (E.D. Pa. Aug. 28, 2008) (Surrick, J.) (Finding no adverse employment action where employee's suspension was withdrawn and he was reinstated with full pay); <u>see also Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 761 (1998) ("[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, a decision causing significant change in benefits.").

As with his termination, Plaintiff cannot show that
this incident in 2006 occurred under circumstances giving rise to
an inference of discrimination.  Plaintiff cannot identify anyone
outside of his protected class who was treated more favorably in
a similar situation or any circumstances surrounding his
termination that infer discriminatory activity.  Therefore, he
cannot establish a prima facie case of discrimination related to
his 2006 discipline.

Assuming _arguendo_ Plaintiff could establish a prima
facie case, he has failed to demonstrate USS's proffered reasons
for his 2006 discipline were pretextual.  USS has consistently
explained that Plaintiff refused to follow his manager's
direction and left work without permission during a scheduled
shift.   Plaintiff has presented no evidence to refute it.

**4. Claim of Discrimination against USS -  Plaintiff'
overtime assignment**

Plaintiff claims USS was forcing him to work overtime
because of his race, dating back to 1998. (Plaintiff Dep. at
45:7; 49:3-7.)  Regardless of the timeliness of Plaintiff'
claims, he cannot establish a prima facie case of discrimination
that he was assigned overtime based on his race.

An adverse employment action involves activity by an
employer "that is serious and tangible enough to alter an
employee's compensation, terms, conditions, or privileges of
employment." Storey v. Burns International Security Services, 390

-27-

F.3d 760, 764 (3d Cir. 2004) (citation omitted).  The Third
Circuit has determined that "assigning an employee to an
undesirable schedule can be more than a 'trivial' or minor change
in the employee's working conditions." Mondzelewski v. Pathmark
Stores, Inc., 162 F.3d 778, 788 (3d Cir. 1998) (citation
omitted).  The Court then concluded that a change from early/late
shift work to a fixed, normal workday schedule could constitute
an adverse employment action if it constituted a change in the
"terms, conditions, or privileges of employment." Id. at 788.

    Objectively viewed, Plaintiff' overtime assignment is
not serious or tangible enough to amount to an adverse employment
action necessary to prove that USS discriminated against him.
Plaintiff was paid for all of the overtime he worked and has not
demonstrated any violation of the BLA regarding the assignment of
overtime.  In fact, according to the BLA, there is no right to
work overtime and no right to be free from working overtime when
required by management. (BLA Article Five, Section C (3).)[7]

---

[7]    Compare Jones v. Sch. Dist. of Phila., 198 F.3d 403,
412 (3d Cir. 1999) (change of teacher's job assignments from
physics teacher to general science teacher, and transfer to a
school which had the reputation of being "difficult" may suffice
to demonstrate plaintiff was subjected to sufficient adverse
employment action); Mondzelewski, 162 F.3d at 787 (meat factory
worker's reassignment to shift leaving him less free time and
requiring him to work Saturday evenings was sufficient to raise a
triable issue as to whether the terms, conditions and privileges
of is job were altered in retaliation for discrimination
complaint, especially where such shift was considered a
"punishment shift" by co-workers); Goss v. Exxon Office Systems
Co., 747 F.2d 885, 888-89 (3d Cir. 1984) (applying objective,

Moreover, Plaintiff has failed to show that he was treated less favorably than similar situated employees outside of his protected class.  He has presented no evidence suggesting he was assigned more overtime than similarly situated black employees or that other black employees were permitted to decline overtime assignments when he was required to work.  Plaintiff avers that Assistant Operator, Bob Yonger, was permitted to report off for the downturn on March 1, 2007.  However, as USS notes, Mr. Younger called off in advance, as required, and had worked in excess of 70 hours that working week. (Cebrick Dep. at

_____

reasonable person test, Court finds plaintiff constructively discharged where she was subject to a series of derogatory comments by management shortly following her maternity leaves about her ability to combine motherhood with a career, and then was reassigned from her much more lucrative sales territory to an inferior territory where she was likely to make less commission); with Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167- 70 (3d Cir. 2001) (plaintiff set forth a pattern of incidents which she contended showed continuous discriminatory treatment at Paper Magic, including that she was not considered for promotion to manager, that her department was consistently understaffed, that supervisors made some negative remarks about her age, and that she was excluded or prevented from participating in several committees or training seminars or other work experiences that would help her chances of advancement, inter alia. But because her employer never threatened to fire her, encouraged her to resign from her position, or involuntarily transferred her to a less desirable position, "[t]he situation does not reach the threshold of 'intolerable conditions.' Although certainly stressful and frustrating, the alleged conduct would not compel a reasonable person to resign."); Robinson v. City of Pittsburgh, 120 F.3d at 1286, 1300-01 (3d Cir. 1997) ("Robinson's allegations that she was subjected to 'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' following her complaint do not rise to the level of the 'adverse employment action' required for a retaliation claim.").

117:22-24-118:1-23; Show Dep. at 64:13-24-65:1-24.)  Mr. Younger, a white male, followed the approved procedure for calling off and was not disciplined.  Plaintiff has not shown that similarly situated employees were treated better, therefore, there can be no showing of a prima facie case of discrimination relating to Plaintiff's overtime assignment.

Even assuming _arguendo_ Plaintiff could establish a prima facie case of discrimination, Plaintiff has not demonstrated that USS's proffered reason for the assigning him overtime is pretextual.  It is agreed that several employees were required to work large amounts of overtime during the relevant time period due to vacancies on the Galvanizing Line. (Cebrick Dep. at 25:25-28:10, 88:23-89:5.)  Plaintiff, like other employees, was required to work overtime and was treated no differently than other employees. (Id. at 89:9-16.)  Moreover, USS avers that Plaintiff has less seniority than other Assistant Operators and was frequently required to cover shifts for those who had more vacation time. (Id. at 91:10-92:7.)  Plaintiff acknowledges that he was required to work more overtime than others because he was less senior. (Complaint at ¶ 10.)  Although such overtime work is likely undesirable, Plaintiff' complaints do not present sufficient evidence to permit a finding of pretext.

**5. Claim of Retaliation against USS**

Plaintiff claims that USS retaliated against him for making race based complaints including: increasing his work schedule, falsely accusing him of insubordination, and subjecting him to unfair discipline. (Complaint at ¶ 42.)

### a. Legal Standard

Plaintiff's retaliation claims under § 1981 are governed also by the burden-shifting framework articulated in McDonnell Douglas. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001). To establish a prima facie case of retaliation, Plaintiff must show: "(1) protected employee activity; (2) adverse employment action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal relationship between the employee's protected activity and the employer's adverse action." Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007) (quotation omitted). Defendant USS only disputes the first and third prima facie case requirements for a retaliation claim.

### b. Analysis

Plaintiff claims he made verbal complaints to management about racial disparities beginning in 2003, and filed a grievance related to race just prior to bring disciplined in

2007.[8] (Plaintiff Dep. at 137:3-138:9; 141:11-143:15; Pl.'s Ex. 14, 15, 16.)  Plaintiff references inadmissible hearsay evidence of Greg Luceney. (Pl.'s Br., doc. no. 28 at 17.)  Plaintiff also claims to have made four separate calls to Thomas Lauritzen, former EEO Affirmative Action Manager at USS. (Id.; Pl.'s Ex. 16.)  Mr. Lauritzen's testimony directly refutes Plaintiff' contention. (Lauritzen Dep. at 17:2-23.)  As explained earlier, at the summary judgment stage, generalized allegations are deficient as a matter of law. See Clair, 592 F. Supp. 2d at 823 n.19.

Regardless, Plaintiff's grievance makes no reference to racial discrimination. (Feb. 22, 2007 Grievance.)  Plaintiff, and others, complained of excessive overtime caused by "injuries, people on sick leave, possible retirements and sporadic hiring practices." Id.  Thus, there is nothing in the grievance that implicates protected activity under § 1981.  Plaintiff cannot establish the first prong of his prima facie retaliation claim.

Even if Plaintiff could establish that he engaged in protected employee activity, his claim still fails because he cannot establish a causal connection between his protected activity and any of his alleged adverse employment actions.  To show a causal connection between the employee's protected

---

[8]    USS and the Union deny that Plaintiff made any race-based complaints. (Show Dep. at 46:13-17; Cebrick Dep. at 42:3-16; Bara Dep. at 56:3-6, 64 :20-24.)

activity and the employer's adverse action, a plaintiff may rely on a "broad array of evidence." <u>Marra</u>, 497 F.3d at 302. An "unusually suggestive proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection," but "the mere passage of time is not legally conclusive proof against retaliation." <u>Id.</u> (quotations, citations, and alterations omitted).

Plaintiff only argues that he was disciplined several days after he filed the grievance and claims that it was "obviously retaliation." (Plaintiff Dep. at 141:17-18.) However, there is no evidence that Plaintiff's supervisors were even aware that Plaintiff filed a grievance. Mr. Cebrick testified that he received the grievance on March 6, 2007, days after Plaintiff's discipline for leaving the plant and insubordination had been issued. (Cebrick Dep. at 101:20-102:4.) Plaintiff has not pointed to any evidence in the record that anyone in USS management had notice of the union grievance prior to March 2, 2007 (when the disciplines were issued). In fact, Plaintiff admits that Mr. Cebrick received the February 22 grievance on March 6, 2007, or four days after the discipline for the March 1, 2007, incident had already been issued. (Pl.'s SOF, doc. no. 30, at ¶ 19.) Therefore, Plaintiff has not established a causal connection between his filing of the grievance and his discipline.

Even assuming _arguendo_ that Plaintiff is able to establish a prima facie case of retaliation, Defendant USS is nevertheless entitled to summary judgment as to Count III, as it has produced a legitimate nondiscriminatory reason for each alleged adverse employment action.  Plaintiff has failed to provide any evidence rebutting Defendant's legitimate, non-retaliatory reasons for his termination, discipline and overtime assignment.  Plaintiff has not shown that these explanations are false and that retaliation was the real reason that Plaintiff was terminated, disciplined and assigned overtime. Accordingly, the Court finds that Plaintiff's § 1981 claim against USS cannot survive summary judgment.

### 6.  Claim of Discrimination against the Union

Plaintiff claims that the Union engaged in intentional discrimination, violating § 1981, by declining to file grievances on the basis of race.  Plaintiff claims that Ms. Bara repeatedly refused to accept his race-based grievances from the beginning of his employment through 2007. (Pl.'s Br. at 22.)

### a. Statute of Limitations

Plaintiff's claims implicate conduct during the course of his employment that is subject to the federal four-year catchall statute of limitations. Jones v. R.R. Donnelly, 541 U.S. 369 (2004) (post-contract formation claims arising under the 1991 Act are subject to the federal statute of limitations).  Thus,

any of Plaintiff's claims under § 1981 that arose prior to July 21, 2004, are time-barred.

Plaintiff admits that, under this statute of limitations, his alleged complaint in June 2003 would be time barred. (Pl.'s Sur-reply, doc. no. 34 at 5.)  However, Plaintiff claims that his time barred complaints, including his alleged complaint in June 2003, are subject to the continuing violation doctrine and are, therefore, reviewable. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (finding that plaintiffs can seek damages for allegedly discriminatory acts that occurred outside the statute of limitation by claiming the actions were part of a continuing series of unlawful conduct that occurred within the statute time frame).

The Court disagrees with Plaintiff and finds that his June 2003 complaint, for being disciplined for missing two days of work, is a discrete act and not subject to the continuing violation doctrine. See O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (holding Plaintiff's claims of adverse employment actions, including wrongful suspension and wrongful discipline, under 42 U.S.C. § 1983, are discrete acts that cannot be aggregated under a continuing violation theory).  Thus, the Court will only consider Plaintiff's claims that arose after July 21, 2004 (four years before the complaint was filed).

**b. Plaintiff's prima facie case of discrimination**

Plaintiff's remaining claims under § 1981 against the Union fail as he cannot establish a prima facie case of discrimination.

## 1. Legal Standard

Under 42 U.S.C. § 1981, a plaintiff can assert a claim against a union for racial discrimination. In interpreting § 1981, the Supreme Court recognized that the statute prohibited unions from using the grievance process to discriminate against racial minorities. Goodman v. Lukens Steel Co., 482 U.S. 656, 669 (1987). Thus, a union cannot engage in any racial discrimination against its members. Id. Furthermore, it cannot not merely ignore member complaints of racial harassment. Id. at 664-65; see also Allensworth v. Gen. Motors Corp., 945 F.2d 174, 179 (7th Cir. 1991) (affirming grant of summary judgment to defendant union because the union addressed plaintiff's complaints of racial harassment); Woods v. Graphic Communications, 925 F.2d 1195, 1203 (9th Cir. 1991) (affirming judgment against union because it failed to properly address plaintiff's complaints of racial harassment).

In order to establish a prima facie case of discrimination in the grievance process, a "plaintiff must produce evidence that would allow a reasonable fact finder to conclude that: (1) [he] was a member of a protected class; (2) [he] was qualified to have the union represent [him] in a

grievance process; (3) that a grievance process existed; and (4) that similarly situated non-protected grievance filers were treated differently." Thomas v. Rite Aid Corp., No 93-1800, 1994 WL 597708, at *5 (E.D. Pa. Nov. 1, 1994) (Reed, J.) (citing Williams v. Lehigh Valley Carpenters Union Local 600, No. 90-0686, 1992 WL 247291, at *4 n.3 (E.D. Pa. Sept. 24, 1992), aff'd, 993 F.2d 880 (3d Cir. 1993), cert. denied, 510 U.S. 873 (1993)).  Additionally, § 1981 is violated only by intentional discrimination. See St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987).

The Union challenges Plaintiff's ability to support the fourth prong of the standard and his burden to evidence any intentional discrimination.

### i. Intentional discrimination

As an initial concern, Plaintiff has failed to meet his burden to prove that the Union intentionally discriminated against him.  He has provided no evidence to raise an inference that the Union handled his grievances in a discriminatory manner. Plaintiff testified that he "repeatedly asked my union representative to file grievances on my behalf [regarding racial discrimination in overtime scheduling and allowing time off], and they were always denied." (Plaintiff Dep. at 53-54.)  Plaintiff claims that Ms. Bara systematically did not file any complaints related to racial discrimination. (Id.)  Again, Plaintiff's only

-37-

evidence is his own testimonial evidence and the hearsay evidence in Harkins' affidavit. (Pl.'s Br. at 22.) Neither is sufficient at this stage of the ligation. <u>Clair</u>, 592 F. Supp. 2d at 823 n.19.

In fact, the record supports the Union's assertion that it did file grievances on Plaintiff's behalf related to the issue of overtime. On February 22, 2007, the Union filed a grievance on Plaintiff's behalf protesting the Company's practice of "excessively scheduled overtime."[9] (Plaintiff Dep. at 141:4-10; Pl.'s Ex. 17.) Moreover, the Union filed grievances protesting discipline Plaintiff received, on September 3, 2006, for insubordination and leaving the plant without permission. The Union filed grievances protesting the two five-day suspensions, subsequently converted by USS into a discharge. The Union processed the grievances through the grievance procedure and obtained a successful resolution of Plaintiff's grievances at Step 3, when USS agreed to rescind Plaintiff's discharge and Plaintiff lost no pay or time from work. (Union Br., doc. no. 24 at 14-15.) Finally, in reference to the March 1, 2007 incident,

---

[9] Richard Cucarese, the Union's Griever, averred that he filed the February 22, 2007 grievance on Plaintiff's behalf protesting USS's scheduling of mandatory overtime. (Union Ex. S, Decl. of R. Cucarese at ¶¶ 3-6.) He avers that this grievance was joined by three other employees and was also signed by Ms. Bara. Mr. Cucarese claims that Plaintiff never mentioned he believed race or gender was playing a part in USS's scheduling of overtime or that he was concerned about racial discrimination at the plant. (<u>Id.</u> at ¶ 7.)

the Union grieved Plaintiff's termination to final and binding arbitration and represented him throughout the grievance procedure and arbitration hearing.

### ii. Similarly situated grievance filers

Plaintiff cannot establish the fourth prong of the discrimination standard, that similarly situated individuals were treated differently in the grievance procedure by the Union. Plaintiff points to nothing in the record that any other individuals were treated more favorably in the grievance procedures by the Union. Plaintiff's conclusory allegations that the Union intentionally discriminated against him cannot survive summary judgment. Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000); see also Wynn-Howard v. USWA, Local 555T, No. 06-916, 2008 WL 768641, at *8 (W.D. Pa. Mar. 20, 2008) ("A Plaintiff's subjective belief that race or gender played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination.").

Accordingly, the Court finds that Plaintiff's § 1981 claim against the Union cannot survive summary judgment.

## V. CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment will be granted. An appropriate order will follow.